and Mr. Chalmers, you may proceed. May it please the court, my name is Arthur Chalmers of the Kansas Attorney General's Office. The United States v. Orneas case referred to reasonable suspicion, saying that the mosaic for reasonable suspicion is multifaceted. I think, although in a slightly different context, that's apropos here, because it says seldom is precedent from another case useful unless it is so light and unless it is without a substantial distinguishing feature. I'll speak up. The troopers here are asked to, when they stop someone, and in these cases the traffic stops were visibly legal, they were both for speeding, when they stop someone, they're asked to look for illegal activity, whether it's transporting people illegally, whether it's transporting bombs or guns, or in this case looking for narcotics. And to do that job and to stop motors, frankly, they need qualified immunity. The Terry case said that we accept under our Constitution the possibility that there will be people that are detained for a period of time, so long as it's reasonable, that they will be detained when there is no untoward conduct. Let's start with Mr. Bosire. Bosire, I think is how I pronounce it. Yes. What nudges that case over the finish line to reasonable suspicion for narcotics? Well, of course. I guess if you could start with what you think, you know, it's totality, but in order of most significant suspicious activity. It's a hard question to say most significant, but I will provide them in this fashion. He is stopped and he's driving a short-term rental vehicle. He is asked about his travel plans and gives evasive answers saying going west, only east. And I guess if I am to emphasize the most important thing that is suspicious is you've got a rental vehicle with mounted cameras on it, both front and back. Now, that's suspicious to the trooper because of the possibility of caravanning. Spin back ten minutes. They had seen Mr. Bosire and another individual at a Love convenience store. The troopers had been on break. They come out. They smell marijuana. They don't say it's on Mr. Bosire. In fact, the smell is not identified on Mr. Bosire. Why are the cameras suspicious for narcotics distribution? Well, it can be used to make sure. I've been doing this for 20 years, and this is the first time I've seen that. Well, I'm told, at least what the record is, that it can be used to make sure that people are delivering the goods and getting the goods back. It can be used for the purposes of assisting in caravanning, which is what these troopers thought might be happening when it left the Love store. And it might be used by a black man who's concerned about being harassed by racist cops, right? I think there's an innocent explanation for it, although it turns out these cameras were not video cameras, and they're only activated when you hit an object. Now, that's not the impression Mr. Bosire gives, and that's not the impression the troopers had. But, yeah, there are innocent explanations for it. The cameras activated only in an accident? Yeah, it's gravity-activated cameras that this guy had mounted on the front and back of his vehicle. And when he's asked about the cameras, he says it's for the reason you expressed, which turns out to be untrue. Now, the trooper didn't know that. The trooper didn't take it as a logical or fair explanation, nor did the trooper believe Mr. Bosire when he initially denied having stood by someone else at the convenience store, which was part of the suspicion that percolated together. It's part of that. I mean, one of the problems that I have with this case is we don't have a written decision from the district court, and yet we have this hearing where the district court makes pretty clear that he assigns no credibility to that affidavit and what happened at Love's Convenience Gas and Go. I mean, are those findings a fact? Do we defer to those? You have to make your argument on this interlocutory appeal with those facts in place? I think that Judge Rattle had the discretion not to make findings under your law and under the rules. Where the courts are asked to make findings on summary judgment ruling in this context, they are supposed to lay out according to the Lewis v. Tripp case the who, the what, the when, the why, and the where. What I think Judge Rattle was doing in her statements, if they can be thought to be factual statements or fact findings, was really addressing how she would interpret the historical facts and how she wouldn't give them any weight. Now, I don't obviously agree with that assessment, but the court can review and make its own assessment for reasonable suspicion factors. In this case, without the written order, don't we have to accept the facts most favorable to the plaintiffs? You do. You do. To the extent there's a dispute, how do you overcome that? I don't know what that dispute is. If you send us back to try the case, what facts do we litigate? What is accepted is that they- Yes, Your Honor. Look at Luggs, for example. The district court struck your attempt to file a late reply brief, which would have attached to it the deposition testimony. So we don't have that. So we're looking just at the affidavit, and if you look at that affidavit, there's no connection between Mr. Bozer, or however you say his name, and the marijuana smell. In fact, it sounds like, from the affidavit anyway, that he was standing at the gas pump while they were standing at the entrance to the store, and a group of people came in and they randomly smelled a marijuana odor, and just for reasons that are not at all clear from that affidavit, said, oh, well, these guys must be caravaning. I think that what you have to, or what the court must accept, is the facts in their light most favorable to the party that's proposing the motion at this stage. And what those facts are, are that you have an undisputed smell of marijuana in a rural convenience store, and you've got troopers now looking for what is the potential source, and they see one rental vehicle, then a second rental vehicle. I don't have the facts. But the rental vehicles aren't even together. The testimony is. And then he later says, you know, the white man that was at the Lowe's is no longer in the vehicle. How on earth could they be caravaning if they're both in the same vehicle? I guess I understand why the district court found this to be not very credible in terms of a reason to be targeting this man. I think that the historical facts, though, are undisputed. The gaps that I would be able to present testimony to fill to answer the last question, how could you have two men leaving in two different cars, I don't have those to present. But what I do have to present as far as the reasonable suspicion is that the officers did form, were acting upon the idea that there was caravaning going on. And they looked at a rental vehicle with, at that point, one camera in the back, and they were looking for people who might be the source of the smell. Now, that puts that scene. How is that not just a hunch? At that point, it would be just a hunch. It puts the seed for there being caravaning, puts the seed for maybe there's something to look at with these folks. And that's when I think they started with the other items. Maybe that's why we prioritized them. Put the final priority last on that. You know, but if we look at it from if there's not enough reasonable suspicion, what Judge Rattle never reached was whether or not this was a violation. It was a violation of clearly established law. And you have those things in the totality of circumstances the court has already considered, in part, to be a valid basis for reasonable suspicion. But no case law that is parallel to this case, or for that matter, the Shaw case, that says that those stops are without reasonable suspicion. What would you want? Someone with a camera on the front and back of the vehicle with a two-day rental who had been standing by the pumps when someone smelled marijuana at the entrance to the convenience store? I think you combine both. You'll never get a successful lawsuit for stop. Well, I think the courts have said that it has to be so. And I don't think it just has to be one case. I think you can have a combination of cases. But I think the courts have said that it has to be so similar as to give reasonable notice to these guys who are out there trying to do their job, that what they're doing is legal. And that's where none of the cases that have been cited have any factual parallels to the Beauserate case and very limited factual parallels to the Shaw case show that there's anything other than reasonable suspicion. All we have probably is an opinion saying this factor is entitled to very little or no weight. So which factors do we have here? Well, I don't know this. In the Beauserate case, courts have considered short-term rentals. Courts have considered and given weight when people are evasive in their answers as to where they're going and traveling. I don't think they said minimal weight to that. And I think that the courts have given weight. Is there a difference between an evasive answer and a refusal to answer? I think there is. You know, the United States v. Williams case is the Tenth Circuit precedent on that. It says you can ask about travel, you don't have to answer, but then goes on to say, but if you don't answer, maybe that's a basis for a little bit more inquiry. So that's not our case because here he did answer. He did give an evasive answer that was unusual that would be in line with those cases where this court has found reasonable suspicion when someone has not said or would not tell them, the officer, where they were headed. A couple quick more points on the facts that I think may come up. Well, actually, I think we kind of touched on those. The clearly established law, the two cases that are looked at, both Vazquez and Wood, they're just not factually parallel. There isn't parallel, frankly, between Vazquez and Wood as it relates to the Shaw style, but only as it relates to, well, one, they say criminal history isn't necessarily enough, but when it is involved, it's very important. It is a strong factor, and that was present in Wood. In the Vazquez case, they say it's been interpreted to be something about a drug court or by the Plaintiff's counsel. I think to some degree they're putting out a false flag as to what it means. But in the Shaw case, what you have is these factors that explain why there is reasonable suspicion, and then you have, in addition to it, oh, and by the way, you're engaged in a longer traffic, where it would be different if you were just going to a shorter location. So that's how that fits and that makes it different than the Wood and the Vazquez case. Was it a factor that they were going to and from Colorado? No. I'd like to review just a second and to answer that. That was a no? That was a no. No, actually, it may be in the Shaw case, they said they were going to Denver. It was that the idea that you were traveling along the drug corridor is what he explained in connection with going to Denver, yes. Now, Chris, we've defined the entire nation, basically, as a drug corridor. Anybody coming from the West Coast, I mean, I guess Judge Timkovich, when he drives around in Denver, he's in a drug corridor. I mean, at some point this becomes ridiculous. Well, except for it's really the destination. Go sniff in here outside the courthouse. It's really the destination. If I'm driving from Lenexa to Topeka, under these circumstances, it's a little bit different than driving from Lenexa to Denver. Yeah, I know that's not your argument. In Vazquez, the U.S. Attorney did say, yes, reasonable suspicion to pull somebody over because they were from Denver. Thank you, counsel. Maybe Colorado Springs. I think it's probable cause. It could be. All right, let's hear from Mr. Pearson. May it please the Court. My name is Josh Pearson. I'm an attorney with the ACLU of Kansas, and I represent the plaintiffs. Your Honors, this case arises out of the Kansas Highway Patrol's continued practice of targeting out-of-state drivers for prolonged roadside detentions. And both troopers in both stops here admit to using the travel to and from Colorado as a basis for their reasonable suspicion. We don't care about their subjective thoughts, right? I don't think we don't care, Your Honor. I agree that's not the measure for your analysis on reasonable suspicion. Their subjective intent, I think, does end up mattering when it comes to their credibility and what they say about the stops. Credibility about their observations? Yes. Credibility of their observations. So what observations are in question here? Well, so it's Mr. Bossiere for the Court. In Mr. Bossiere's stop, we talked about the smell of marijuana. That's a cornerstone fact, and it's the very first fact that the troopers say led them to start suspecting Mr. Bossiere. But Trooper McMillan can't explain when he first smelled it. He first claimed to smell it when a group passed him as he was exiting the convenience store, but then later was confronted with the video of the convenience store and was forced to say there was no group passing him. That should be fatal to their motion for summary judgment. That is a cornerstone fact of their analysis or their theory of reasonable suspicion that they cannot explain. And further, if anything, there's evidence to exonerate Mr. Bossiere from the smell of marijuana. On the side of the road before the prolonged detention, Trooper McMillan admits that he doesn't smell marijuana in the car after Mr. Bossiere rolls down the window. In addition, we talked about caravanning a moment ago. Okay. We have to review the evidence and the like most favorable to the plaintiff in any event, right? Yes, Your Honor. So if there's any question, unless it's undisputed that they smelled it, we would discount that. We wouldn't consider that in any event, whether they're credible in fact or not. As long as there's some basis to say the testimony regarding smelling marijuana, I can't remember where I started the sentence. You know what I'm getting at. You're in good shape on that point regardless of whether we think they're not telling the truth or not. Yeah, I think I agree with you. That's right. And I guess my point is that it's yet a further reason for the court to have denied summary judgment, that there are credibility issues, which while you're correct, their subjective belief about reasonable suspicion isn't the measure. Their credibility is important because so many of the facts,  But your challenge here is there's some information that they, there's some other information they're relying on. And you have to say that we have clearly established in the circuit, there's not going to be any Supreme Court decision on this, that that particular information is too weak to support reasonable suspicion on its own, too weak to be considered for reasonable suspicion. So you need to go through each of these facts that they're relying on. Do you agree with that? I think I understand your question. So it is the totality of the circumstances. That is correct. I think, so under vast You're not going to find a case on all fours with this. So for you to say that it's clearly established that this was an improper stop, the best you're going to be able to do is take each individual component and say we have greatly discounted that in our precedence. Is that fair to say? Well, I don't think it's fair to say that that's the best we can do. I agree that that is something we can do and we try to do in the briefs. But I actually think it's remarkable, if you look at some of the language in Vasquez, how similar, when the court summarizes the totality of the circumstances, how similar that is to the stops in the Shaw's and Mr. Bosiris' case. You could almost take some of that language from the Vasquez opinion and write an opinion here in the same way. The nature of the car, who owns the car, the condition of the car inside, the nervousness of the occupants or non-nervousness of the occupants, travel to and from Colorado. So I think even under the totality of the circumstances, it's remarkable how similar Vasquez is and how clearly established the law is. Is that a short-term rental? Short-term rental, yes. I'm sorry, what's your question? Did Vasquez have a short-term rental? No. In Vasquez, he was driving a new car or driving an old car when he owned a new car or something like that. It's important that we ignore the dissent in that case, too. I would say, Your Honor, so I know in Vasquez, you were concerned that it was a close call. It was a close call. And I think your opinion in Vasquez, be it as it was, after Vasquez, it's no longer a close call. And so while you may have dissented in Vasquez, I think after the decision, it was the decision in Vasquez that now we have clearly established law. Let me focus you on one issue in the Shaw case, and that is the officer's description of the failure to pull over quickly or immediately. And, you know, if what the district court said at the hearing was a finding, the district court rejected that. But we've got the officer saying, you know, he evaded pulling over. And we have case law that says that's a pretty relevant factor. How do we deal with that? So I think this is an interesting one, Your Honor, because you're right. In the sense of a historical fact, there is no dispute about how long it took the Shaws to pull over. We have the video. We agree that it took about a minute or so to pull over. What is in dispute is how suspicious it was. And there's a dispute between the parties about the proper role of the jury in deciding that. But here we know that Trooper Schulte was actually on the road and actually in front of the Shaws' vehicles when he activated his lights. It was an unusual stop. It was not the normal speed trap where he's on the side of the road and someone blows by at 90 miles an hour. Instead, he was driving the Shaws past him, and he actually activated his lights, the Trooper did, before the Shaws had passed him. And so the Shaws affidavit, and in the record, they say they were unsure of what that meant, and Judge Rattle agreed with them. She thought it was an unusual stop. So this gets to this mixed question in reasonable suspicion cases, I think, that there is no dispute as to the historical fact of the time it took for the stop to occur, but there is a dispute that a jury should resolve about how suspicious that was given the circumstances. Wouldn't it depend on what Trooper saw in his rearview mirror going on in that car? If they were shuffling things around or looked like they were doing something suspicious to conceal something, wouldn't that have made a difference? I think it could have. It certainly could have, but it's not a fact we have here. Testimony about whether he was looking in his rearview mirror to see what was going on? I'm not aware of any. I don't think there's anything in the record about what Trooper Schulte saw prior to turning on his lights. Were they in the same lane? If I remember correctly, they were in the passing lane. There were actually a number of cars that passed the Trooper's vehicle, and so they're in the passing lane past Trooper Schulte. The lights turn on, and they switch lanes and get in the same lane in front of him. So if your question is were they in the same lane behind him, I don't think we know the answer to that. I'm not sure that that's in the record. In looking at this on appeal, and, again, without any factual findings or maybe there were factual findings at the hearing, you're not looking at we're not saying whether there's reasonable suspicion. We're looking at whether there's arguable reasonable suspicion, and that's a lower standard, isn't it? I agree. Yes. I think the standard is whether there is arguable reasonable suspicion. That's correct. I don't think that the defendants have met that here. I do want to address this point that there weren't written findings and that there is some question about what the district court held. The district court was explicit, and there is a jurisdictional problem here. The district court made findings and explicitly, in an almost two-hour long hearing, went through a number of facts that she explicitly stated on the record were disputed. The smell of marijuana, the caravanning car, the lived-in look of the Shaw's vehicle, supposedly. These were findings that the court made on the record and found disputed, and she was explicit also about denying summary judgment because there were disputed issues of material fact. So I think based on that record, while true she didn't write findings of fact, the defendants have the Johnson problem. They have the problem that this is not the basis for interlocutory appeal. There was no final decision from which they can bring this appeal. The defendants rely on that Lewis v. Tripp case to say that the district court needed to write out her findings and say what explicitly supported the plaintiff's record. But that's not, I don't read the Lewis v. Tripp case that way, and if you look at the Tiffany case, the Tiffany Springs case, there's language in there that makes clear that if the court identified material facts that were at issue which precludes summary judgment, then this court should defer to that and should be hesitant to look behind, even if it would disagree with the district court's determination, look behind the summary judgment record. So we do think there's a jurisdictional problem here as well. Well, I guess, I mean, it would be very helpful if even if there wasn't a written opinion, there was at least, I find that. And it's more, I mean, I understand what you're saying, because it certainly looks like she concluded that the affidavit wasn't credible or understandable about the interaction at Lowe's and the caravanning. I'd be a lot more comfortable if there were actual findings here. And I'm not, I'm really struggling with what I do with these musings on the record that we have. So I will say, we go through them in the brief. Our first section in the brief points out all of the different facts that were discussed on the record with the district court, and she was explicit about finding, about which of those facts she thought were not credible. She was explicit about the lack of an inference of truth-telling on the troopers' parts. So I agree with you. There were not written findings, obviously, where she highlighted each one of these things, but she did on the record go through in some detail many of the issues that she found in dispute. Does Johnson preclude the defendants in the civil rights case from saying, from appealing on the ground that if you take the evidence in the light most favorable to the plaintiff, we still win, either because there was reasonable suspicion or because it wasn't clearly established that there was not reasonable suspicion? Don't we have jurisdiction? I have a lot of trouble understanding Johnson. So I think under Johnson, and then this Court recently dealt with it in the Tiffany Springs case very nicely, under those cases, this Court lacks jurisdiction to entertain an interlocutory appeal if the district court decided the summary judgment motion by finding there are questions of material fact that were in dispute. But even if the defendant is willing to accept adverse findings? So I suppose that would be a different question, and I don't think that's what we have here. In other words, if you discount all of the facts, is this your question, if I understand you? If you discount all of the facts that the district court found in dispute and the defendant says we still have reasonable suspicion, I think that would be a different case than we have here. I'm not sure of the applicability of Johnson in that situation. May I ask one other question about Judge Fradel didn't opine on clearly established law. Is that correct? That's correct. Was the issue raised? Well, the defendant certainly raised qualified immunity, and they certainly argued below that there was not clearly established law. They argued that at this two-hour proceeding? I don't think we got there yet, and I think that's why there isn't a final decision. Without a jury deciding these disputed facts, it will not be clear whether qualified immunity applies or not. There is a preliminary question here first, many preliminary questions here first, which are was there a smell of marijuana? Was there another car that was caravanning? Was the car, the Shaw's car, lived in? And the defendants, not just the troopers subjectively, but the defendants and their briefs rely on those facts to support the reasonable suspicion argument. But all of those facts are in dispute, and Judge Fradel found they were all in dispute. So, yes, we didn't discuss clearly established law in detail in the district court in that hearing, but that is, in my understanding, the purpose of the Johnson decision, that there is no final decision yet because there aren't the facts established from which to decide whether or not qualified immunity applies. I guess they'll get another bite of the qualified immunity apple at halftime, if it goes to trial, halftime of your trial or after trial. I think that's right. Just to summarize briefly, Your Honors, we think there are substantial material issues of fact here. We think the district court properly denied summary judgment. We'd ask you to affirm her ruling. Thank you, Counselor. Did we have any rebuttal time? Could you give him a minute, please? Thank you for the additional time. Is qualified immunity against the lawsuit? Second bite doesn't give me everything I get if I'm entitled to qualified immunity. Judge Frattle would not grant my motion to alter an end, which included making finding of facts. A lot of what Judge Frattle was saying, I think, in my opinion, was her expression of how maybe she viewed whether there was reasonable suspicion or not. I'll use one example. You can go through the rest of them. The lived-in looks in the back of the Shaw's vehicle. In the Supreme Court case, the Averez case, I think I'm mispronouncing that, that's the very example that you have of how you might have something that looks like an innocent camping trip but still can be innocent and can still be suspicious under the circumstances. It's the court that has to decide whether or not a reasonable officer from an objective test would view this as suspicious, and then the court decides whether or not the law is so clearly established that no officer, unless they're plainly incompetent, would have thought otherwise. Unless you've got questions, I'll sit down. Thank you, counsel. Counsel are excused. Case shall be submitted.